IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANTONIOUS DOTSON, Jr. (TDCJ No. 02074381), | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO.4:16-CV-674-Y |
| OFFICER J.R. RICKS, *et al.*, | § § § | |
| Defendants. | § | |

**OPINION and ORDER OF DISMISSAL**
**UNDER 28 U.S.C. §§ 1915A & 1915(e)(2)(B)**

This case is before the Court for review of pro-se inmate/plaintiff Antonious Dotson Jr.'s pleadings under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). As explained below, the live pleadings subject to review under these statutes are Plaintiff's complaint, more definite statement, and supplemental more definite statement. After review and consideration of Plaintiff's claims, the Court finds and determines that all claims must be dismissed under authority of these provisions.

I.  **BACKGROUND/PLEADINGS**

In this suit Dotson filed a form civil-rights complaint naming as defendants J.R. Ricks, officer, Fort Worth police department, and the Fort Worth police department. (Complaint (doc. 1) at 1-2). In the statement-of-claim section, Dotson wrote:

On April 16, 2015, my sister, a friend, and myself was

> [sic] walking down the street when Officer Ricks drove by. He drove 2 blocks and did a U-turn and approached us in a rude manner saying we didn't wave at him and how he was letting us make it walk on the wrong side of the street. We didn't know that was a crime there are no sidewalks where we were walking and we weren't in the middle of the street. After he got our information and asked us he didn't find any paraphernalia and none of us had warrants. While he's doing this we were sitting on the curb. He then came over and started being rude and disrespectful. After he looked and realized I wasn't listening he came and snatched me off the curb. I know resisting arrest is a crime so I complied and out of nowhere he punched me in the face. I reacted on a reflex and hit him back. I then ran because I was scared and I wasn't far from my house. I got caught and surrendered when more officers drug me in an ant pile and kicked and punched me.

(Complaint (doc. 1) at 5). After review of that pleading, the Court directed Dotson to file a more definite statement, with answers to the Court's specific questions about the claims made in the complaint. (Order for More Definite Statement (doc. 16)). Dotson filed a handwritten more definite statement.(More Definite Statement (MDS)(doc. 19)). Although Dotson initially failed to answer several questions, after another Court order, Dotson filed a Supplemental More Definite Statement. (Suppl. MDS (doc. 25)). In response to the Court's questions, Dotson listed several additional facts concerning the incident:

> After searching us and checking for warrants he had the three of us sitting on the curb and when he walked back to us my phone was ringing and I tried to answer it and he told me "Put that fucking phone up I know what you are trying to do." As if I was trying to record him or something. At first I refused to put my phone away because I knew I've the freedom of speech and that could've been my Dad or my step-mom trying to tell me something. And also violating my 4th Amendment Illegal

2

Search and Seizure.  By not having much of a reason to detain any of us and by telling me to put my phone away and in a threatening tone and furious glare, telling me "not to use my phone" was rude and disrespectful for an officer of the law.

After the first incident with my phone, in which my sister insisted I just put my phone away, there was another ringing or notification from my phone and not knowing if it was an emergency from my family or what, when I picked it up to take a look from my phone through my peripheral I could see him rushing toward me and before I could say anything or even react, he was grabbing my left shoulder and left arm simultaneously literally pulling and snatching me onto my feet. And he was saying I was "under arrest."

I never resisted him arresting me. I never fought or even tried to fight back. I've seen on T.V. how officers arrest people. He was twisting my arm behind my back and I was raising my other arm behind my head for the universal sign of "surrendering."  And at the time I was 17, the officer is a huge fellow, so it wouldn't have taken much to arrest me if those were his true intentions. After he punched me my neck was stiff and my vision was blurred and the timing of the event just launched my mind into survival mode and all I was trying to do was defend myself. Before I realized what I was doing I swung back and ran.

I'm not positive about which hand I hit him with my strong hand is my right hand so I would chance it but because I was seeing stars and my neck was stiff by the minute I just wanted to protect myself. Honestly, I don't even think I actually hit him and by chance that I did it'd be impossible for me to hit him hard enough for him to sustain any type of injury.

[T]his drug raid was about 3 or 4 blocks away from my house and when the officer stopped us, I could still be able to look and see our backyard from the side street we were on.  So after I swung (possibly hit) the officer and ran, I crossed a field turned a corner and was heading back in the general direction of where I'd hit (or not hit) the officer. But my goal was to make it home. I was close but I heard the fast approach of police cruisers and I'd just stop running and walked casually.  Before the first unknown officer even told me to do anything I

> immediately layed [sic] down in the middle of the street. After that officers still drew their weapons and I was truly terrified.
>
> After I surrendered multiple officers were discretely hitting me kneeing me in my back and neck and I ended up in the grass and in a antpile and I heard them say "I deserved it for hitting a cop."
>
> The injuries I sustained were sore and stiff back and after that when I stand up I get dizzy and I've even passed out a few times. Ant bites on my thighs and genital area.

(MDS (doc. 19) at 1-3).

Dotson alleges that the officers' actions violated his First Amendment right to freedom of speech and his Fourth Amendment right to be free of the use of excessive force. (MDS (doc. 19) at 4). He acknowledges that he was charged with assault on a public servant in the 371st Judicial District Court, Tarrant County, Texas.[1] (MDS (doc. 19) at 4). Dotson pleaded guilty to the assault on a public servant charge in exchange for "2 years probation," but he acknowledges that he ended up having the community supervision

---

[1] A search of the Texas Department of Criminal Justice Offender Search on-line database confirms that Antonious Lamar Dotson Jr. was convicted of assault on a public servant in the 371st Judicial District Court, Tarrant County, Texas. See https://offender.tdcj.texas.gov/OffenderSearch/offenderDetail, action?sid=50681783. Dotson appealed his conviction to the Second Court of Appeals, and after the case was transferred to the Sixth Court of Appeals, that court affirmed the conviction in a January 25, 2017 Memorandum Opinion in Case No.06-16-00139-CR. See http://search.txcourts.gov/Case.aspx?cn=06-16-00139-CR&coa=coa06. The Memorandum Opinion recites the trial court history: "Antonious Lamar Dotson, Jr. pled guilty to assault of a public servant (footnoting to TEX. PENAL CODE ANN § 22.01(b)(1)(West Supp. 2016)) pursuant to a plea agreement. In accordance with the sentencing recommendations included in the plea agreement, the trial court placed Dotson on two years' deferred adjudication community supervision. Subsequently, in May 2016, the State moved to proceed to adjudication. Dotson pled true to many of the violations alleged by the State. The State abandoned all allegations to which Dotson plead not true and rested its case on Dotson's pleas of true. Following the presentation of punishment evidence, the trial court sentenced Dotson to four years' incarceration." *Id.*

revoked and that he is now serving a sentence of four years. See footnote 1 *supra.* In the complaint, Dotson sought to have this Court "examine my case and allow me civil judgment." (Complaint (doc. 1) at 5). In the Supplemental MDS, Dotson expressly seeks punitive and compensatory damages in the amount of $125,000. (Suppl. MDS (doc. 25) at 1).

## II.  SCREENING UNDER § 1915A and § 1915(e)(2)(B)

Dotson is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for sua sponte dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim that

5

falls under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

## III.  ANALYSIS

### A.  No Municipal Liability

Dotson has named as a defendant the City of Fort Worth police department. In the order for a more definite statement, the Court informed Dotson that to be sued, a municipal entity had to have its own legal jural existence. (Order for MDS(doc. 16) at 5 n.1); *see generally Darby v. City of Pasadena*, 939 F.2d 311, 313-14 (5th Cir. 1991)(noting that a plaintiff may not bring a civil-rights action against a servient political agency or department unless such

agency or department enjoys a separate and distinct legal existence); *see also Parker v. Fort Worth Police Department*, 980 F.2d 1023, 1025-26 (5th Cir. 1993). In response to the Court's question of whether he had any information to support a claim directly against the Fort Worth police department, Dotson acknowledged that he did not have facts to make any showing of jural existence.(Suppl. MDS (doc. 25) at 1). And although the Court asked Dotson if he intended any other government entity to be named as a defendant, Dotson answered "I do NOT at this time intend my claims to be against Any government entity." (Suppl. MDS (doc. 25) at 1). Thus, any claims against the Fort Worth police department must be dismissed.

In response to a question about whether he wished to name any other government entity instead of the Fort Worth police department, Dotson wrote that he would like leave to amend to name the City of Fort Worth itself. (Suppl. MDS (doc. 25) at 1). In response to the Court's separate request for Dotson to state his claims against any other government entity, including any theory of recovery and facts in support, however, Dotson wrote "I do NOT intend to name ANY government entity at this time." *Id.* Thus, although the Court's order for a supplemental more definite statement already gave Dotson the chance to expressly name the City of Fort Worth, Texas, and to set forth facts supporting any claim against such defendant, Dotson declined. The Court provided Dotson

7

a chance to plead facts to state any involvement by the City of Fort Worth with the underlying events made the basis of this case, but he failed to respond.

Although a city or county is a "person" within the meaning of 42 U.S.C. § 1983 a municipal government may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). The Supreme Court, in *Monell*, emphasized that a local government entity cannot be held liable under § 1983 on a *respondeat superior* basis:

> [T]herefore . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983.

*Id.* at 694. Thus, § 1983 liability attaches against a local governmental entity only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 59 (2011)(quoting *Monell*, 436 U.S. at 692); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)(liability "only where the municipality *itself* causes the constitutional violation at issue") (emphasis in original). An official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to

8

practically have the force of law." *Prince v. Curry*, 423 F. App'x. 447, 450 (5th Cir. 2011)(quoting *Connick,* 563 U.S. at 60.) Dotson has not provided any factual allegations whatsoever of a policy or custom of the City of Fort Worth. Thus, any claims Dotson could assert against the City of Fort Worth, Texas, must be dismissed.

**B.     Application of *Heck v. Humphrey***

(I). Fourth Amendment Claim

With regard to the remaining claims against Officer Ricks, and as an alternative ground for dismissal of any claims Dotson might have against the City of Fort Worth, Texas, the Court considers application of the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). In the *Heck* case, the Supreme Court held that when a successful civil-rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Id*. at 486-87. A plaintiff does so by achieving "favorable termination of his available state or federal habeas opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). "[T]he *Heck* determination depends on the nature of the offense and of the

claim." *Arnold v. Slaughter*, 100 F. App'x. 321, 323 (5th Cir. 2004). *Heck* bars claims for "unconstitutional conviction or imprisonment" as well as claims "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *Heck,* 512 U.S. at 488.

As noted above, Dotson was charged and convicted of assault on a public servant. (MDS (doc. 19) at 4). Dotson acknowledges that he pleaded guilty to this offense as charged, and the 371st Judicial District Court adjudicated him guilty of the charge of assault on a public servant, in violation of Texas Penal Code 22.01(b)(1). See Footnote 1 *supra*. The United States Court of Appeals for the Fifth Circuit has recognized that "how *Heck* applies to excessive force claims is not always clear" because in proving an excessive-force claim, the plaintiff will not invariably invalidate his conviction. *Arnold v. Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004)(citing *Hudson v. Hughes*, 98 F.3d 868, 873 (5th cir. 1996)). In *Thomas v. Pohlmann*, 681 F. App'x 401, 407 (5th Cir. 2017), the Fifth Circuit reversed a district court's dismissal of claims of excessive force as barred by *Heck,* because the plaintiff's claim included allegations of excessive force not only in effectuating the arrest, but also much later while plaintiff was housed in a detention center. *Thomas*, 681 F. App'x at 407 (citing *Bush [v. Strain]*, 513 F.3d 492, 500 (5th Cir. 2008)("[A] claim that excessive force occurred after the arrestee[s] ha[d] ceased [their] resistance

10

[does] not necessarily imply the invalidity of a conviction for the earlier resistance")). But the court of appeals in *Thomas* recognized their earlier opinion in *Arnold* found significance in the fact that the plaintiff did not allege any use of excessive force after he stopped resisting arrest, but rather he simply alleged that he did nothing wrong. *Thomas*, 681 F. App'x at 407 (citing *Arnold*, 100 F. App'x at 324.) In *Arnold*, the court of appeals determined that review of the Plaintiff's excessive-force claim "squarely challenges the factual determination that underlies his conviction for resisting an officer" and thus was barred by *Heck*. *Arnold*, 100 F. App'x at 324-25. The court also recognized that "certain convictions will prevent a plaintiff from bringing an excessive force claim":

> For example, we have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir.2000); *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir.1999). We reached this holding after determining that Texas law permits an officer to use any force—even deadly force—to protect against an aggravated assault. *Sappington*, 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault. *Id.* And thus a judgment would call into question the plaintiff's conviction. *Id.* Likewise, we have also held that a Louisiana conviction for battery of an officer—a crime for which justification is an affirmative defense—prevents the plaintiff from suing for excessive force in connection with the incident. *Hudson*, 98 F.3d at 873. If the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction. *Id.* As these cases show, the

> *Heck* determination depends on the nature of the offense and of the claim. *Cf. Hudson*, 98 F.3d at 873 (noting that, because of the nature of the plaintiff's offense, the conceptual difference between an excessive force claim and a challenge to a conviction "may be applicable in many section 1983 claims of excessive force, [but] it does not help [plaintiff] today").

*Arnold*, 100 F. App'x at 323.

This case is controlled by the logic of *Arnold.* Unlike situations where the alleged improper force takes place after the defendant stopped resisting arrest, in this case, Dotson directly challenges the use of force during the efforts by defendant Ricks and other Fort Worth officers to pursue and arrest him. Where a plaintiff "maintain[s] that he acted without fault throughout the entirety of his encounter with police, his excessive force claim 'squarely challenge[s] the factual determination that underlies his conviction for [assault on a public servant]' and thus [is] barred by Heck." *Thomas*, 681 F. App'x at 407 (quoting *Arnold*, 100 F. App'x at 324-35)); *accord Whatley v. Coffin*, 496 F. App'x 414, 417 (5th Cir. 2012)(per curiam)("[A]ccepting the version of events alleged by Whatley, his § 1983 claims were necessarily inconsistent with his assault of a public servant convictions and thus are barred by Heck")(citing *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007)).

As Dotson's Fourth Amendment claim of excessive force for the actions of Officer Ricks in arresting him arise from the same conduct for which he was convicted, success on such constitutional

12

claim in this Court would necessarily imply the invalidity of Dotson's conviction for assault on a public servant. *See generally DeLeon*, 488 F.3d at 656–57 (concluding that because the plaintiff's complaint maintained his complete innocence, his excessive-force claim was "inseparable" from his conviction for aggravated assault on a police officer); *Hainze,* 207 F.3d at 798 (5th Cir.2000) (holding that "based on *Heck,* an excessive force claim under § 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events")(citing *Sappington,* 195 F.3d at 237 (noting that civil-rights plaintiff's criminal conviction for aggravated assault on a peace officer under Texas Penal Code § 22.02(a)(1) necessarily implied that the police officer defendant did not use excessive force)).

Dotson has not shown that his conviction has been reversed or set aside in any of the manners listed in *Heck v. Humphrey*. Accordingly, Dotson's claims in this civil lawsuit, whether they be for monetary damages or for declaratory judgment, are not cognizable and must be dismissed. *See Heck*, 512 U.S. at 487-88; *see also Reger v. Walker*, 312 F. App'x. 624, 625 (5th Cir. 2009)(noting that claims, "whether for damages, declaratory judgment, or injunctive relief" are not cognizable in a § 1983 action because they imply the invalidity of conviction). The claim is "legally frivolous" within the meaning of 28 U.S.C. § 1915 and should be dismissed "with prejudice to their being asserted again until the

*Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

(II).    False Arrest

Dotson also includes an allegation that he was subjected to a false arrest. (MDS (doc. 19) at 4). In order to prevail on a false-arrest claim, Dotson would have to show there was no probable cause to arrest him. *See Club Retro. L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *see also Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)("To ultimately prevail on his § 1983 false arrest/false imprisonment claim, [plaintiff] must show that [the officer] did not have probable cause to arrest him")(citation omitted). Generally, where a plaintiff is arrested for a crime of which he is ultimately convicted, *Heck* bars recovery for the false-arrest claim, because the conviction necessarily implies that there was probable cause for the arrest. *Walter v Horeshoe Entm't*, 483 F. App'x 884, 887-88 (5th Cir. 2012)("[T]he plaintiffs were arrested for crimes of which they were ultimately convicted. *Heck* therefore bars recovery for the false arrest claim, because the conviction necessarily implies that there was probable cause for the arrest.") In this case, Dotson's false-arrest claim is barred under *Heck* due to his subsequent guilty plea to assault on a public servant.

(III).    First Amendment

In his more definite statement, Dotson also recites that his right to freedom of speech was violated "because at the time of

14

this incident I felt like it was important my father be notified and be there to handle the situation properly, that the officer took advantage of us because we were in a predicament to not fully defend ourself [sic]."(MDS (doc. 19) at 4). It is not clear exactly what Dotson is claiming, but to the extent he is claiming that Officer Ricks arrested him for his exercise of a First Amendment right to freedom of speech, such a claim is also barred by *Heck v. Humphrey*. A claim for First Amendment retaliation based on an arrest requires proof that there was no probable cause for the arrest. *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("Probable cause is an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment"). Dotson's still valid conviction for assault on a public servant is evidence that Officer Ricks had probable cause to arrest him. Thus, Dotson's claim that he was arrested for his statements is also foreclosed by the doctrine set forth in *Heck. See Price v. Elder, et al.*, 175 F. Supp. 3d 676, 679 (N.D. Ms. 2016)(noting that a claim that the officer arrested plaintiff for his statements that he was going to complain to the city's mayor about police harassment, where plaintiff was later convicted for resisting arrest and other charges, would be foreclosed by *Heck*).

In sum, all of Dotson's claims are alternatively foreclosed by

application of the doctrine of *Heck v. Humphrey*, and thus his claims must be dismissed "with prejudice to their being asserted again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

**IV. CONCLUSION and ORDER**

For the foregoing reasons, plaintiff Antonious Dotson Jr.'s claims against the Fort Worth police department and the City of Fort Worth, Texas are **DISMISSED WITH PREJUDICE** under authority of 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Furthermore, all Dotson's claims against defendant Officer J.R. Ricks, and alternatively, all Plaintiff's claims against the City of Fort Worth, Texas, are **DISMISSED WITH PREJUDICE** to being asserted again until the *Heck v. Humphrey* conditions are met,[2] under authority of 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).

SIGNED June 20, 2018.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[2] *See Johnson,* 101 F.3d at 424.